UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION


ADAM MICHAEL WALLACE,

                    Plaintiff,

                                                        Case No. 3:23-CV-00704-YY

            v.

                                                        OPINION AND ORDER

MARK NOOTH, DAVID PEDRO,
and LIZA EMORY,

                    Defendants.


YOU, Magistrate Judge.

        *Pro se* plaintiff Adam Wallace, an adult in custody at Eastern Oregon Correctional

Institution ("EOCI"), brings this 42 U.S.C. § 1983 action alleging claims against Oregon

Department of Corrections ("ODOC") employees Mark Nooth, David Pedro, and Liza Emory in

both their individual and official capacities. Second Am. Compl. 2-3, ECF 91. Plaintiff claims

that his First Amendment and Fourteenth Amendment rights were violated when he was

removed from his kitchen assignment as a form of retaliation after he made grievances. *Id.* at 13.

Plaintiff also contends there is an ongoing Eighth Amendment violation because defendants have

refused to acknowledge and act on a rodent infestation. *Id.* at 12. Currently pending is

defendants' Motion for Summary Judgment (ECF 98). For the reasons stated below, the motion

is granted.

## I.    Legal Standards

### A.    Summary Judgment

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (citing Fed. R. Civ. P. 56(e)).

In determining what facts are material, the court considers the underlying substantive law regarding the claims. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Otherwise stated, only disputes over facts that might affect the outcome of the suit preclude the entry of summary judgment. *Id*. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id*. at 248-49. A "scintilla of evidence" or "evidence that is merely colorable or not significantly probative" is insufficient to create a genuine issue of material fact. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu*, 198 F.3d at 1134 (citation omitted).

**B.      42 U.S.C. § 1983**

42 U.S.C. § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (internal citation and quotation marks omitted). Section 1983 liability "arises only upon a showing of personal participation by the defendant" who, acting under color of state law, deprived the plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); 42 U.S.C. § 1983. "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Federal courts hold a *pro se* litigant's pleadings to "less stringent standards than formal pleadings drafted by lawyers." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987); *see Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (*per curiam*) (a document filed *pro se* "is to be liberally construed"; a plaintiff need only give the defendant fair notice of the claim and the grounds on which it rests) (citation omitted). "However, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). In addition, *pro se* pleadings may not receive the benefit of every conceivable doubt, but only to reasonable factual inferences in the plaintiff's favor. *McKinney v. De Bord*, 507 F.2d 501, 504 (9th Cir. 1974).

**II.      Discussion**

Defendants move for summary judgment, contending that plaintiff fails to establish any constitutional violation under the First, Eighth, or Fourteenth Amendments. Mot. Summ. J. 2,

ECF 98. Defendants also argue that defendants Nooth and Pedro cannot be liable under *respondeat superior*, as plaintiff fails to show any personal involvement by these supervisory defendants. *Id.* at 4-5. Moreover, defendants assert that plaintiff is barred under the Eleventh Amendment to bring a claim against defendants in their official capacity. *Id.* at 10. The court addresses the merits of plaintiff's constitutional claims first, followed by defendants' arguments on supervisory liability and Eleventh Amendment immunity.

### A.  Eighth Amendment Claim

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotation marks omitted). The Eighth Amendment requires that prison officials must ensure prisoners "receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Nevertheless, conditions of confinement may, consistent with the Constitution, be restrictive and harsh. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

To bring a valid Eighth Amendment claim against a prison official, an inmate must (1) objectively show that the inmate was deprived of something sufficiently serious, and (2) make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety. *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013). The objective prong "requires a plaintiff to plausibly allege that it is 'contrary to current standards of decency for anyone to be . . . exposed against his will' to the relevant hazard," that is, the resulting risk is not "one that 'society chooses to tolerate.'" *Hampton v. California*, 83 F.4th 754, 766 (9th Cir. 2023). As to the subjective prong of the Eighth Amendment analysis,

prisoners must establish that prison officials "'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Id.* at 767.

Here, plaintiff alleges there is an ongoing Eighth Amendment violation because of a "rodent infestation" in EOCI's kitchen and food production area. Second Am. Compl. 12, ECF 91. He alleges that rodent droppings are found on an everyday basis "on the floor, on surfaces of serving areas, on trays that inmates use[] to consume their meals, as well as many areas of the kitchen." *Id.* However, defendants have produced a General Inspection Report that shows "ECOI Food Service received a perfect score on its most recent health inspection." Emory Decl. ¶ 33, ECF 100. The report makes no mention of any rodent infestation. *See id.,* Ex. 3, ECF 100-3. Furthermore, defendant Emory, EOCI's Food Service Manager, provided a declaration that "Food Services at EOCI has had . . . traps for rodent control for as long as [she] can remember," and that, "[beginning] in late 2022, Paramount Pest Control began a monthly service for the entire institution." *Id.* ¶¶ 22-23.

Thus, the only evidence in the record shows there is no widespread rodent infestation as plaintiff alleges.[1] Moreover, even a temporary lapse in sanitary food service would not be sufficiently serious to constitute an Eighth Amendment violation. *Estey, Jr. v. Gower et al*, No.

---

[1] The court advised plaintiff that he could not "simply rely on what [his] complaint says" and had to produce evidence in response to the motion for summary judgment. Summ. J. Advice Notice, ECF 101. He was also advised that if he did not "submit [his] own evidence in opposition, summary judgment, if appropriate, may be entered against [him]." *Id.*; *see also Tyler v. John Doe Corr. Officers*, No. C05-1189 RSM, 2006 WL 1734210, at *1 (W.D. Wash.  June 23, 2006) (citing Fed. R. Civ. P. 56(e)) ("In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and produce evidence sufficient to establish the existence of the elements essential to his case."). Plaintiff has offered no evidence in response to the Motion for Summary Judgment; *see* Resp., ECF 102, and his Second Amended Complaint is unverified.

1:16-CV-00028-PK, 2017 WL 1282249, at *4 (D. Or. Mar. 16, 2017), *report and recommendation adopted*, 2017 WL 1289841 (D. Or. Apr. 4, 2017) ("Neither isolated instances of food poisoning, temporary lapses in sanitary food service, nor service of meals contaminated with maggots are sufficiently serious to constitute an Eighth Amendment violation.") (quoting *Bennett v. Misner*, No. CIV.02-1662-HA, 2004 WL 2091473, at *20 (D. Or. Sept. 17, 2004), *aff'd,* 180 F. App'x 732 (9th Cir. 2006)).

Plaintiff also offers no evidence that defendants knew of the alleged deprivation and disregarded a substantial risk to his health and safety. *See Hampton*, 83 F.4th at 767. Because plaintiff has failed to make an objective showing of a sufficiently serious deprivation or a subjective showing of deliberate indifference by defendants, his Eighth Amendment claim fails.

**B.      First Amendment Claim**

Throughout November and December 2022, plaintiff was assigned to work near EOCI's main kitchen in the pan room. Emory Decl. ¶ 6, ECF 100. On November 22, 2022, plaintiff submitted a grievance against defendant Emory, alleging that "kitchen staff served [him] and the rest of the [adults in custody] population meat that expired in 2018[.] *Id.,* Ex 2 at 2, ECF 100-2. Defendant Emory responded to plaintiff about a week later, stating the date that plaintiff was referring to "is a batch date, also known as the production date," not the expiration date. *Id.* at 1. She further stated, "This product has been tested and is acceptable to serve. Not only has the Food Service Coordinators, but I myself have sampled it as well with no issues." *Id.* Subsequently, plaintiff was reassigned away from the pan room on December 22, 2022. *Id.*, Ex 1 at 2. Plaintiff alleges that he was reassigned out of retaliation because he filed the grievance against defendant Emory. Second Am. Compl. 13, ECF 91.

It is well-established that "[a] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)) (alteration omitted). "The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities . . . as well as a right of meaningful access to the courts." *Id.* (citing *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995)). "Therefore, interference with the grievance process may, in certain circumstances, implicate the First Amendment," including where prison officials retaliate against an inmate for seeking redress of grievances. *Rodriguez v. Anderson*, No. 2:20-CV-01914-AR, 2023 WL 8654285, at *3 (D. Or. Nov. 13, 2023), *report and recommendation adopted,* 2023 WL 8716871 (D. Or. Dec. 18, 2023) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)).

An inmate's claim for First Amendment retaliation has five elements: 1) the plaintiff engaged in protected conduct; (2) the defendant took some adverse action against the plaintiff; (3) there is a causal connection between the protected conduct and adverse action; (4) the adverse action had a chilling effect on the plaintiff's First Amendment rights; and (5) the defendant's "retaliatory action did not advance legitimate goals of the correctional institution[.]" *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

Here, it is undisputed that plaintiff engaged in protected conduct by filing a grievance. *See* Emory Decl., Ex. 2 at 2, ECF 100-2. It is also undisputed that defendants removed plaintiff from his kitchen assignment. An email correspondence among the prison staff shows they intentionally removed plaintiff from the kitchen. *See* Mancuso Decl., Ex. 1, ECF 99-1. However, plaintiff offers no evidence to show a causal connection between his grievance and the adverse action. Email communication among the prison staff shows that plaintiff was removed from his

kitchen position because he repeatedly violated prison rules, not because he made a grievance. Despite direct orders "to stay out of the scullery," plaintiff would "sneak in" and "take[] it upon himself to move the trays that need to be bleached." Mancuso Decl., Ex. 1, ECF 99-1. His actions were causing problems because he would "end[] up getting water in [the work boots]" and other workers had to then work "in wet boots in winter time." *Id.* Thus, plaintiff's unsupported contention that he was removed from the kitchen because he filed a grievance consists of nothing more than mere speculation.

In addition to a lack of causal connection, EOCI had a legitimate correctional goal in removing plaintiff from the kitchen assignment. ODOC's rules of conduct prohibit inmates from entering unauthorized areas, and plaintiff continuously violated that rule. Emory Decl. ¶ 13, ECF 100.

In sum, there is no genuine issue of material fact regarding whether plaintiff's removal from the kitchen was causally connected to his protected conduct or that defendants had a legitimate correctional purpose in reassigning plaintiff from the kitchen. Accordingly, defendants are entitled to summary judgment.

### C.    Fourteenth Amendment Due Process Claim

After December 21, 2022, plaintiff was removed from his kitchen work assignment. *Id.*, Ex. 1 at 2. Plaintiff contends his Fourteenth Amendment due process rights were violated because "he never received a hearing about why he was being told that, '[h]e is not able to work in the Food Services Area.'" Resp. 2, ECF 102.

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." To prove a violation of procedural due process rights, a plaintiff must show (1) deprivation of a protected liberty or property interest, and (2)

denial of adequate procedural protections. *Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001).

Plaintiff fails to establish he was deprived of a protected liberty or property interest because a work assignment is not a constitutionally protected interest. Courts have consistently held that prisoners do not have any constitutionally protected liberty interests in a particular housing assignment, inmate work assignment, privileges, or incentive level. *See Womack v. Kelly*, No. 6:19-CV-00686-JR, 2020 WL 2768687, at *3 (D. Or. May 28, 2020) (citing *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004)); *Monro v. Cain*, No. 2:20-CV-00866-SU, 2021 WL 1323412, at *3 (D. Or. Feb. 10, 2021), *report and recommendation adopted*, 2021 WL 1321293 (D. Or. Apr. 8, 2021). Thus, plaintiff's due process claim fails.

### D.    Supervisory Liability

There is no *respondeat superior* liability under § 1983. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Liability under § 1983 "arises only upon a showing of personal participation by the defendant." *Id.* An official may be liable as a supervisor "only if either (1) [the official] personally involved in the constitutional deprivation, or (2) a sufficient causal connection exists between the supervisor's wrongful conduct and the constitutional violation." *Felarca v. Birgeneau*, 891 F.3d 809, 819–20 (9th Cir. 2018).

Plaintiff alleges that defendant Nooth, the Eastside Administrator, and defendant Pedro, the Superintendent, had "the ability to stop [d]efendant Liza Emory's behavior and chose to side with [her] instead of actually investigating and responding to the issues that the [p]laintiff reported." Resp. 2, ECF 102. However, because plaintiff has failed to establish any underlying constitutional violation, he cannot show that defendants Nooth and Pedro were personally

involved in a constitutional deprivation or that a causal connection exists. Accordingly, defendants Nooth and Pedro are entitled to summary judgment.

### E.    Eleventh Amendment Immunity

Because plaintiff has failed to establish any underlying constitutional violation, it is unnecessary to address Eleventh Amendment immunity.

**ORDER**

Defendants' Motion for Summary Judgment (ECF 98) is granted.

DATED January 2, 2026.

/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge